IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES E. REED,

                Plaintiff,

vs.                                      Case No. _____

VVF KANSAS SERVICES LLC

[Serve its registered agent:
Kurussh Amrolia
1705 Kansas Avenue
Kansas City, KS 66105],

                Defendant.

## COMPLAINT

1. This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Plaintiff James E. Reed is an African-American citizen of the State of Missouri.

3. Defendant is a limited liability company organized in Nevada with its principal place of business in Kansas City, Kansas.

4. Defendant is a subsidiary of VVF Ltd., which is based in India and which describes itself as a global leader in oleochemicals and personal care products.

5. Defendant operates a manufacturing facility located at 1705 Kansas Avenue in Kansas City, Missouri.

6.     Defendant's registered agent of record with the Kansas Secretary of State is Kurussh Amrolia at the address noted above.

7.     Plaintiff began working for defendant in January 2017.

8.     Plaintiff was employed by defendant until December 2019.

9.     Throughout plaintiff's employment, defendant was an "employer" within the meaning of Title VII.

10.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

11.    This Court has personal jurisdiction over the parties.

12.    Venue is proper in this Court.

13.    In November 2018, a Caucasian supervisor named Joe Tessar made a crude sexual innuendo by holding up a dollar bill near his belt buckle, looking at plaintiff, and saying "all you can eat for under a dollar."

14.    Plaintiff reported this incident to his supervisor, Cliff Proehl, who said it would be escalated, but plaintiff was not told anything further.

15.    On information and belief, Mr. Tessar was not disciplined for his behavior.

16.    Mr. Tessar engaged in other inappropriate and offensive behavior in the workplace but, again, he was not disciplined for his behavior.

17.    In or around September 2019, plaintiff used the term "young lady" while speaking with a Caucasian employee named Cassandra, who responded angrily and raised her voice when she said to plaintiff: "I don't go around calling you boy, *boy*."

18.    Plaintiff reported this incident to Cassandra's supervisor, Carissa Dowdy.

19. Ms. Dowdy told plaintiff that she had received other complaints about Cassandra.

20. Ms. Dowdy told plaintiff that Cassandra needed diversity training.

21. Plaintiff was not told anything further about what, if anything, defendant did in response to his complaint of racial harassment by Cassandra.

22. In or around October 2019, a Caucasian employee named Jett – who was friends with Cassandra – began making disrespectful and racist comments to plaintiff, such as referring to plaintiff as "boy."

23. Plaintiff reported Jett's behavior to his boss, Amber Dillard, who said she would take care of it.

24. Again, plaintiff was not told anything further about what, if anything, defendant did in response to his complaint of racial harassment by Jett.

25. On information and belief, Jett was not disciplined for his behavior in or around October 2019.

26. After October 2019, Jett continued to taunt and harass plaintiff.

27. On or about November 13, 2019, Jett made a racist "gorilla" gesture toward plaintiff and said: "Who is this? It's you!"

28. The next day, plaintiff reported Jett's behavior to defendant's human resources department and the plant manager, Ryan Hull.

29. On information and belief, Jett was not disciplined for his behavior in November 2019.

30. On or about December 5, 2019, plaintiff told Mr. Hull that someone had hung a noose in the plant.

31. Later the same day or the following day, Mr. Hull and a corporate human resources representative named Hector met with plaintiff.

32. Hector said he was there to "close the case."

33. Hector and Mr. Hull told plaintiff that they could not "confirm" plaintiff's complaints of race discrimination and harassment.

34. Instead, plaintiff was disciplined for alleged "inappropriate and disorderly conduct."

35. After December 5, 2019, Jett continued to taunt and harass plaintiff.

36. On or about December 20, 2019, plaintiff went to human resources to report Jett's ongoing harassment.

37. Plaintiff was told to wait in a room, which he did for approximately two hours.

38. While waiting, plaintiff could feel his blood sugar waning, which he reported to a new HR manager named Callie, who gave him a banana to eat.

39. Out of nowhere, plaintiff was falsely accused of being under the influence.

40. Plaintiff initially agreed to take a drug test.

41. Plaintiff was then told that, regardless of the outcome of the drug test, he would be on indefinite suspension.

42. Plaintiff also saw that defendant already had cleaned out his locker and placed his things in a box.

43. Plaintiff also saw that defendant had a security guard standing by as if he was a criminal.

44. Plaintiff believed the way he had been and was being treated were additional unlawful acts of racial harassment and retaliation, so he told them he did not want to take the drug test and would be speaking with his lawyer.

45. Later that morning, plaintiff called defendant several times to say he would take the drug test and he also sent an email confirming his willingness to take the drug test.

46. Plaintiff's attempts to communicate were ignored and it was obvious that he had been set up for termination with a false accusation that he was under the influence and by telling him to take a discriminatory/retaliatory drug test when he already had been targeted for termination.

47. Plaintiff was subjected to unlawful racial harassment and retaliation for opposing unlawful discrimination, which included subjecting plaintiff to racist comments and conduct, failing and refusing to take appropriate action to remedy the racially hostile work environment, giving unwarranted discipline to plaintiff while protecting and excusing Caucasian employees who engaged in similar and worse behavior, falsely accusing plaintiff of being under the influence, cleaning out plaintiff's locker and telling plaintiff he would be suspended indefinitely regardless of the results of any drug test, posting a guard as if plaintiff was a criminal instead of a valued and equal employee of defendant, ignoring plaintiff's phone calls and email when he agreed to take the drug test, and failing to return some of plaintiff's personal property (including a wedding ring) after he was terminated.

48. The purported reasons for plaintiff's discipline and termination were a pretext for unlawful race discrimination and/or retaliation in that defendant exaggerated

and/or fabricated the reasons for disciplining and ultimately terminating plaintiff while Caucasian employees who engaged in actual misconduct were treated in a preferential manner.

49. After terminating plaintiff, defendant continued to discriminate and retaliate against plaintiff by opposing and thereby resulting in the denial of his application for unemployment benefits.

50. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against defendant on March 2, 2020.

51. After an attempt at conciliation, the EEOC issued a right to sue notice with respect to plaintiff's EEOC charge on September 15, 2020.

52. Plaintiff has met all administrative requirements and deadlines for filing this lawsuit.

## COUNT I – RACIAL HARASSMENT

53. Plaintiff hereby incorporates by reference the foregoing paragraphs of his complaint.

54. Plaintiff was subjected to unlawful racial harassment in that the conduct described above was offensive and degrading; plaintiff was subjected to it because of his race; it was sufficiently severe or pervasive so that plaintiff felt, and a reasonable person in plaintiff's position would have felt, that the work environment was hostile, abusive, and degrading; defendant knew or should have known of the harassment; and defendant failed to prevent the harassment and/or failed to take prompt and appropriate corrective action to end the harassment.

55. Defendant thereby violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. § 1981.

56. As a direct result of the unlawful harassment, plaintiff sustained actual damage, including emotional distress, degradation, and humiliation.

57. Defendant's violation of plaintiff's civil rights was sufficiently culpable to warrant an award of punitive damages in that defendant acted with malice or reckless indifference to plaintiff's civil rights.

## COUNT II – RACE DISCRIMINATION

58. Plaintiff hereby incorporates by reference the foregoing paragraphs of his complaint.

59. Plaintiff's race was a motivating factor in defendant's decisions to discipline and/or suspend and/or terminate plaintiff.

60. Defendant would not have disciplined, suspended, and/or terminated plaintiff but for his race.

61. Defendant would not have contested plaintiff's application for unemployment compensation but for his race.

62. In each of the foregoing respects, defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. § 1981.

63. As a direct result of defendant's violations of plaintiff's civil rights, plaintiff sustained actual damages, including lost wages and benefits and denial of unemployment compensation, as well as emotional distress, degradation, and humiliation.

64. Defendant's violation of plaintiff's civil rights was sufficiently culpable to warrant an award of punitive damages in that defendant acted with malice or reckless indifference to the plaintiff's civil rights.

## COUNT III – UNLAWFUL RETALIATION

65. Plaintiff hereby incorporates by reference the foregoing paragraphs of this pleading.

66. Plaintiff engaged in protected activity within the meaning of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by reasonably and in good faith opposing racial discrimination in the workplace.

67. Plaintiff's opposition to racial discrimination was a determining factor in defendant's decision to discipline him on December 5, 2019.

68. Plaintiff's opposition to racial discrimination was a determining factor in defendant's decision to accuse him of being under the influence and tell him to take a drug test on December 20, 2019.

69. Plaintiff's opposition to racial discrimination was a determining factor in defendant's decision to suspend him on December 20, 2019.

70. Plaintiff's opposition to racial discrimination was a determining factor in defendant's decision to terminate him on December 20, 2019.

71. Plaintiff's opposition to racial discrimination was a determining factor in defendant's decision to challenge his application for unemployment.

72. In each of the foregoing respects, defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. § 1981.

73. As a direct result of defendant's violations of plaintiff's civil rights, plaintiff sustained actual damages, including lost wages and benefits and denial of unemployment compensation, as well as emotional distress, degradation, and humiliation.

74. Defendant's violation of plaintiff's civil rights was sufficiently culpable to warrant an award of punitive damages in that defendant acted with malice or reckless indifference to the plaintiff's civil rights.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff seeks entry of judgment against defendant on each of his claims herein, together with an award of actual damages, punitive damages to punish defendant and serve as a deterrent to defendant and others, reinstatement and/or other equitable relief, attorney fees, costs, expenses, and such other relief as the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on every issue so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the place of trial as Kansas City, Kansas.

Respectfully submitted,

SCHUMAKER CENTER FOR EMPLOYMENT LAW, P.C.

By  /s/ *Larry M. Schumaker*
      Larry M. Schumaker        D. Kan. #70450

10401 Holmes Road, Suite 480
Kansas City, Missouri 64131
Telephone:     816.941.9994
Facsimile:      816.941.8244
E-mail:           lms@schumakercenter.com

ATTORNEY FOR PLAINTIFF